UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OLE HOUGEN,<br><br>Defendant. | Case No. 20-cr-00432-EJD-1<br><br>**ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION**<br><br>Re: Dkt. No. 205 |

Before the Court is Defendant Ole Hougen's ("Hougen") post-trial motion for acquittal and a new trial, pursuant to Federal Rules of Criminal Procedure 29 and 33 respectively, or to dismiss the indictment for lack of jurisdiction. Def.'s Mot. for New Trial [or] to Dismiss for Lack of Jurisdiction ("Mot."), Dkt. No. 205. The Government filed an opposition, Dkt. No. 206 ("Opp'n"), and Hougen filed a reply, Dkt. No. 207 ("Reply"). Having considered the parties' papers, the record in this case, and the relevant legal authority, the Court **DENIES** Hougen's motion for the reasons stated below.

## I.  BACKGROUND

On July 5, 2020, Hougen was arrested in Santa Cruz, California, after an altercation with S.B., a black man. Mot. at 1. This led to a federal grand jury indictment charging Hougen with committing a hate crime against S.B., in violation of 18 U.S.C. § 249(a)(1), for a "racially-motivated knife attack." Indictment, Dkt. No. 13; Opp'n at 1.

Pretrial, the Court ruled it would "admit evidence of three prior incidents of Hougen's racially-motivated violence and the resulting convictions as relevant to Hougen's motive" for the attack at issue in this case. Opp'n at 1 (citing March 22, 2021 Minute Entry, Dkt. No. 118, at 3).

The parties later stipulated to the convictions resulting from the three prior incidents. Amended Stipulation and Order re: Prior Convictions, Dkt. No. 156.

A six-day jury trial followed. April 2, 2021 Minute Entry, Dkt. No. 150. At trial, the Government presented testimony from ten witnesses, recordings of 911 calls, as well as other evidence. There were three eyewitnesses to the attack, Wendy Campbell ("Campbell"), Carlos Nunez ("Nunez"), and Casey Steen ("Steen"). Each of the eyewitnesses testified that Hougen was the aggressor and that S.B. was not holding any type of weapon. Over a hearsay objection, Campbell, testified that S.B. told her Hougen used the n-word during the November 17th attack. Mot. at 2 (citing Trial Tr., Dkt. No. 195 at 401:14-15). Steen heard a white man yell that S.B. was a "nigger."

The Government also offered testimony from FBI Special Agent Elizabeth Green, who interviewed Hougen while she and her partner transported him to custody. Opp'n at 4. Hougen told her he initiated the encounter with S.B. and that he had used racial slurs. *Id*. The Government also offered testimony from two police officers who responded to the scene of the attack: Officer Joshua Garcia and Officer Becerra. S.B. identified Hougen as the man who attacked him with a knife after S.B. refused to sell Hougen marijuana ("weed"). *Id*. at 5 (citing. Tr. at 429, 444). S.B. also had a knife, but he told Officer Garcia he had not used it during the altercation. *Id*. (citing Tr. at 480, 484). As Officer Garcia completed arrest paperwork, Hougen called him "bean dip," "spico," and "Mexico." *Id*. at 5. Officer Garcia attempted to read Hougen his *Miranda* rights, but Hougen interjected "Garcia, you're a colored person and I'm a white person. This is racist. I don't understand it from you at all." Gov. Ex. 8.

Officer Becerra testified that at the time of arrest, Hougen volunteered, "I can tell you right now, nothing happened." Opp'n at 5 (citing Tr. at 509). Officer Becerra did not hear Hougen make any claims of self-defense until he was told he was being arrested and was being placed into a patrol car. *Id*. at 5-6 (citing Tr. at 509-10). Four additional witnesses testified about three prior

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION

1  incidents involving Hougen. Mot. at 2, 9. In each instance, Hougen threatened or attacked Black
2  men while using racial slurs. Opp'n at 6-7.
3        During the defense case, Hougen sought to introduce evidence that on March 23, 2021,
4  S.B. had allegedly assaulted a man identified as Darren Barthel ("Barthel"). Mot. at 2-3. The
5  Court excluded evidence of S.B.'s arrest for felony assault with a deadly weapon (and other
6  crimes), but permitted Barthel to testify as to S.B.'s reputation "for aggression in the community."
7  *Id*. at 3, n. 1. The defense also called two officers to testify: Sergeant David Forbus, who
8  interviewed S.B., and Officer Dylan Dewees, who interviewed Steen. On April 9, 2021, the jury
9  returned a guilty verdict. April 9, 2021 Minute Entry, Dkt. No. 170.
10       Hougen now seeks acquittal and a new trial, or dismissal for lack of jurisdiction. *See* Mot.
11 at 4-25. Hougen asserts the Court should grant him a new trial because (1) there was insufficient
12 evidence to convict him, (2) prejudicial evidence was improperly admitted, (3) relevant evidence
13 was improperly excluded, and (4) the Government "impermissibly relied" on his invocation of his
14 Fourth Amendment right to remain silent. *Id*. at 4-19. In the alternative, Hougen argues the Court
15 should dismiss the indictment for lack of jurisdiction because the provision of the statute under
16 which Hougen was convicted was an unconstitutional exercise of Congress' power under the
17 Thirteenth Amendment. *Id*. at 19-25. The Government opposes the motions, arguing that the
18 evidentiary rulings were correct, that there was sufficient evidence to support the conviction, and
19 that the jurisdictional argument is without merit.
20       Sentencing is set for December 2, 2021. Clerk's Notice Continuing Hr'g, Dkt. No. 217.

## II.   LEGAL STANDARDS

### A.   Motion for Acquittal

Federal Rule of Civil Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "In determining whether evidence was insufficient to sustain a conviction, we consider whether, 'after viewing the evidence in the light most favorable to the

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION
3

1    prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond
2    a reasonable doubt.'" *United States v. Gagarin*, 950 F.3d 596, 602 (9th Cir. 2020) (quoting
3    *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (*en banc*)).  When evaluating the
4    sufficiency of the evidence, "it is not the district court's function to determine witness credibility
5    when ruling." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).

### B.   Motion for a New Trial

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  The defendant has the burden of justifying a new trial.  *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989).  Although this burden is not as demanding as the one for a motion for acquittal, motions for a new trial are generally disfavored and should only be granted in exceptional cases.  *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012). "A motion for new trial is directed to the discretion of the judge."  *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).  When considering a motion for a new trial, the court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses."  *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (citation omitted).  "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury."  *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

### III.  DISCUSSION

### A.   Motion for Acquittal and a New Trial

To convict Hougen of committing a hate crime, the Government had to prove, beyond a reasonable doubt, that "[t]he defendant willfully caused bodily injury and attempted to cause

bodily injury using . . . a dangerous weapon" and "acted because of the actual or perceived race or color of" the victim. 18 U.S.C. § 249(a)(1). The Government also had to prove, beyond a reasonable doubt, that Hougen did not act in self-defense. Final Jury Instrs. ("Jury Instrs."), Dkt. No. 167, at 21. Force likely to cause death or great bodily harm is justified in self-defense only if a person reasonably believes that such force is necessary to prevent death or great bodily harm. *See id*. at 17-21.

Hougen raises four grounds for a new trial: (1) the Government presented insufficient evidence regarding the beginning of the attack, (2) evidence of Hougen's prior acts was overly prejudicial, cumulative, and confusing, and likely considered as evidence of guilt for the charged crime by the jury, (3) the Government allegedly impermissibly relied on Hougen's invocation of his right to remain silent, and (4) evidence of the March 23rd incident should have been admitted. Mot. at 5-19. Hougen also argues that the cumulative impact of the allegedly insufficient evidence and other errors deprived him of a fair trial.

**1.     Lack of Evidence Regarding Initial Phase of the Alleged Attack**

Hougen claims the Government failed to present evidence regarding the initial phase of the alleged attack, and therefore there was insufficient evidence to prove (1) that he did not act in reasonable self-defense, and (2) that he attacked S.B. because S.B. was Black or African American. He reasons that in the absence of evidence regarding the initial phase of the attack, the jury likely rendered its verdict based on improper speculation regarding his mental state. The arguments are unpersuasive.

Although none of the witnesses saw how the attack began, the record includes ample evidence from which the jury could infer that Hougen did not act in self- defense. All three witnesses to the attack saw Hougen as the "aggressor" and S.B., unarmed, and backing away and "defending himself" against Hougen's attack. Tr. at 404, 491-92, 630, 634. Campbell saw Hougen not only shouting at S.B., but slashing and stabbing S.B. with a knife (going for S.B.'s head and chest) "approximately 10-20 times, coming within inches of striking him." *Id*.; Tr. at

392:17–395:14, 404:8-20, 409:22–411:4.  Nunez also testified he saw Hougen, the "aggressor," attacking S.B., "swip[ing] and slash[ing] at S.B.'s midsection with a knife multiple times, trying to stab S.B., while S.B. was in a defensive posture with his hands up, trying to de-escalate the encounter and get across the street."  Tr. at 626-31, 634.  Nunez said S.B. repeatedly tried to get away, but every time, Hougen stepped in S.B.'s way, continuing the attack.  *Id*. at 636.  Steen said the white man was the "aggressor," and S.B. tried to "defend himself," though he was unarmed.  Tr. at 491-92.

Hougen reported to law enforcement that he had acted in self-defense.  Hougen told the police S.B. held his own knife during the attack (after it fell out of its sheath).  Tr. at 469:7-15, 509:11-12, 519:6-7.  However, none of the witnesses saw S.B. holding a knife.  Even if S.B. had held a knife at some point during the attack, it does not follow that the Government failed to prove Hougen did not act in self-defense.  As the Government points out, "[t]he mere fact that S.B. possessed a knife, without any indication that he used it against Hougen," does not tend to show Hougen had a reasonable belief that he was in mortal peril.  Opp'n at 9.  Moreover, given the consistent testimony of the three eyewitnesses summarized above, the jury could readily find that Hougen did not reasonably believe the force he used was necessary to prevent death or great bodily harm.

There was also overwhelming evidence that Hougen attacked S.B. because of S.B.'s race.  When describing how the attack started, both S.B. and Hougen told the police said that after S.B. refused (with an expletive) to sell Hougen weed and walked away, Hougen followed S.B. and directed several racist slurs and expletives at him.  Tr. at 652-56.  Thus, although S.B.'s refusal to sell Hougen weed may have been the initial reason for the confrontation, Hougen's response was racially motivated.  The attack ensued and Hougen continued making racist slurs.  Steen heard a white man yell, calling S.B. a "nigger" at least five or ten times while swinging at S.B.'s chest and head "with an unknown object."  Tr. at 489-90.  S.B. told Campbell that Hougen had called him a "fucking nigger" and was "trying to kill him."  *Id*. at 403.  During his arrest, Hougen also directed

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION

6

racist language and slurs at Officer Joshua Garcia and Officer Becerra. Opp'n at 5-6 (citing Tr. at 346, 348, 439-41, 514-18).

Hougen attempts to minimize the significance of his repeated racist slurs, arguing that he uses the n-word as a universal insult meaning an "ignorant person." Tr. at 655-56. The jury, however, was not required to accept this explanation. "[I]t is the jury's exclusive function to determine the credibility of witnesses, resolve evidentiary conflict and draw reasonable inferences from proven facts." *United States v. Bernhardt*, 840 F.2d 1441,1448 (9th Cir. 1988) (citation omitted). Circumstantial evidence and reasonable inferences drawn from that evidence alone are sufficient to sustain a conviction. *See United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992); *see also United States v. Nelson*, 419 F.2d 1237, 1239 (9th Cir. 1969). A "reasonable" inference is one that is "supported by a chain of logic, rather than . . . mere speculation." *United States v. Navarrette-Aguilar*, 813 F.3d 785, 793 (9th Cir. 2015). Hougen's language is strong circumstantial evidence that Hougen attacked S.B. because S.B. was Black or African American.

Hougen cites several cases where courts have granted or upheld the granting of new trial motions when the Government "failed to present sufficient evidence of the defendant's mental state or intent to meet this high standard, requiring the jury to speculate regarding this element." Mot. at 7. For example, in *United States v. Kellington*, the Ninth Circuit affirmed the trial court's grant of a new trial where there was no direct evidence of the defendant's intent. *United States v. Kellington*, 217 F.3d 1084, 1099 (9th Cir. 2000) ("[B]ecause there was no direct evidence of Kellington's mental state, the government asked the jury to infer from the overall circumstances that Kellington must have known MacFarlane was asking him to assist in the destruction and concealment of objects useful to an 'official proceeding.'").[1] Unlike the cases Hougen cites, there

---

[1] *See also Juan H. v. Allen*, 408 F.3d 1262, 1277 (9th Cir. 2005) (reversed and remanded where the "record contain[ed] manifestly insufficient evidence . . . that Juan H. knew that Merendon planned to commit the first-degree murders . . . and . . . acted in a way intended to encourage or facilitate these killings"); *United States v. Henderson*, 318 F. Supp. 3d 1221, 1243 (E.D. Wash 2018) (finding insufficient evidence to prove the defendant willfully "made a false statement in order to obtain funds . . . to which he was not entitled"); *United States v. Lorenzo*, 534 F.3d 153, 161-62 (2d Cir. 2008) (finding government provided "sparce" evidence to prove the requisite

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION

7

1  is substantial evidence upon which a rational trier of fact could find beyond a reasonable doubt
2  that Hougen had the requisite intent without resorting to any speculation. As discussed above,
3  three witnesses testified that Hougen was the aggressor, attacking an unarmed S.B. with a knife
4  while S.B. backed away and tried to fend off Hougen's attack. Hougen made repeated racial slurs
5  during the attack. Hougen's statements to the arresting officers, including the racist slurs, are also
6  circumstantial evidence that he acted willfully, motivated by race, and not in self-defense. This is
7  not "an exceptional case in which the evidence preponderates heavily against the verdict." *United*
8  *States v. Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012). The evidence presented at trial was
9  sufficient to establish the essential elements of the crime beyond a reasonable doubt.

### 2. Evidence of Hougen's Prior Acts

Hougen also argues the Government wrongfully introduced and relied on prejudicial, cumulative, and confusing testimony about his three prior acts of racial violence (which occurred over seven years) to make up for the "limited direct evidence" of the attack at issue here. Mot. at 9-10. He argues that in doing so, the Government made the jury see the prior bad acts as evidence of his guilt ("spillover prejudice"). *Id*.

The Court already considered Hougen's argument during pretrial litigation and rejected it. In brief, under Federal Rule of Evidence 404(b), evidence of another crime, wrong, or act is admissible if it is "relevant to an issue in the case other than [the] defendant's criminal propensity." *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995) (quoting *United States v. Green*, 648 F.2d 587, 592 (9th Cir. 1981)). "Unless the evidence of other acts only tends to prove propensity, it is admissible." *United States v. Becerra*, 2000 U.S. App. LEXIS 8420, at *5, 2000

---

mental state as, "in the aggregate," the evidence presented "support[ed] at most an inference that [the defendant] knew that she was assisting suspicious behavior; [and was] also [] consistent with [her] providing hospitality to her nephew's girlfriend and regretting providing such assistance"); *United States v. McIntosh*, 2014 U.S. Dist. LEXIS 6413, at *9, 2014 WL 199515 (S.D.N.Y. Jan. 17, 2014) (finding government failed to provide "sufficient evidence for a reasonable juror to conclude beyond a reasonable doubt that defendant [] intended to" commit robbery when he assaulted Biggs, as it was "at least as likely [the defendant] assaulted Biggs because Biggs repeatedly put his mouth on the communal liquor bottle after [the defendant] told him not to, as it was that defendant intended to rob Biggs or his colleagues").

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION

8

WL 486268, at *2 (9th Cir. Apr. 25, 2000) (citing *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991)).

Here, the Government presented evidence of the three prior acts to prove an essential element of the offense: that his attack on S.B. was motivated by race. Each of the witnesses testified that in the three prior attacks, an unprovoked and irate Hougen threatened or attacked Black men while yelling racial slurs (and in two of the three incidents, death threats) at them. Tr. at 355-66, 374-75, 688-99, 761-64. Similarly, in the attack at issue here, an unprovoked Hougen attacked an unarmed S.B. and hurled racial (and other) slurs at S.B. before and during the attack. "Evidence of past racial animosity is relevant to establish" someone acted because of the victims' "race, color, religion[,] or national origin," and therefore had a discriminatory motive. *United States v. Woodlee*, 136 F.3d 1399, 1410 (10th Cir. 1998). Therefore, "evidence of a previous racially motivated act is admissible under Rule 404(b) in the case of a criminal defendant charged with a racially motivated crime." *Burke v. City of Santa Monica*, 2011 U.S. Dist. LEXIS 165475, at *49, 2011 WL 13213593, at *17 (C.D. Cal. Jan. 10, 2011) (citing *Woodlee*, 136 F.3d at 1410); *see United States v. Curtin*, 489 F.3d 935, 951 n.5 (9th Cir. 2007). The prior attacks were also relevant to disprove Hougen's claim that his use of the word "nigger" in this case had no racial meaning.

The Court also rejected Hougen's objection to the evidence of prior attacks under Federal Rule of Evidence 403. The prior attacks are highly probative of his motive and intent. *United States v. McInnis*, 976 F.2d 1226, 1231-32 (9th Cir. 1992) (affirming admission, pursuant to Rule 403, of a "poster with [a] swastika and the words 'Niggers Get Out! Go Back to Your Slums!'" and other items imprinted with swastikas, including a flashlight that also bore the defendant's nickname). The potential unfair prejudice of the prior acts was substantially mitigated by the Court's limiting instructions to the jury to only consider the evidence as to Hougen's motive and intent, not for any other purpose. Jury Instr. Nos. 6, 12. The Court also instructed the jury that it

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION

9

may not consider the prior attacks as evidence of guilt of the crime for which the defendant is now on trial.

The three prior acts were properly admitted.

### 3. Hougen's Invocation of His Right to Remain Silent

Hougen next argues that the Government improperly used Hougen's "post-*Miranda* silence against him in court," in violation of his Fifth Amendment right to remain silent. Mot. at 11-12 (citing Tr. at 513-16, 612–13; and *Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976)). The record indicates otherwise. The Government never referenced Hougen's invocation of his right to remain silent. Instead, the Government permissibly relied on statements Hougen voluntarily made to officers on the scene of the crime and at the jail, all of which were made before Hougen asked to speak with a lawyer.

Hougen cites to the following exchange with Officer Garcia as evidence that he invoked his right to remain silence:

> GARCIA: You have the right to remain silent. . . .
>
> HOUGEN (2:10:04): You don't know about real rights. You're a liar. You're a racist.
> . . .
> GARCIA: Do you wish to speak with me?
>
> HOUGEN: I don't wanna speak to you.

Gov. Ex. 8. Second, Hougen cites on the following exchange with Officer Bailey:

> BAILEY: Ole, . . . I'm gonna read you your Miranda rights, alright?
>
> HOUGEN: I don't wanna hear it. . . . Go away. I don't wanna hear it man.
> . . .
> BAILEY: Alright Ole, you have the right to remain silent, anything you say can and will be used against you in court. [overlapping]
>
> HOUGEN: I don't wanna hear it. Just go away. I don't give a f***. It doesn't matter if you say it or not. I don't wanna hear it. Go away. Go the f*** away.
> . . .

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION

10

>BAILEY: You have the right to talk to an attorney.
>
>HOUGEN: I have the right to tell you to shut up. Get away from me. . . . Go away. Let me talk to my lawyer.

Gov. Ex. 9. The statements relied upon by the Government, however, preceded Hougen's request to talk to a lawyer. The Government elicited testimony that Hougen called S.B. a "nigger" and used racial slurs against Officer Garcia. When Hougen did express his desire to talk to a lawyer, the Officer stopped reciting the *Miranda* rights to Hougen and walked away. Tr. at 516.

Third, Hougen argues that the Government impermissibly relied on testimony from Officer Becerra that Hougen "was given an opportunity to make a statement when he was provided his Miranda warning and elected not to provide a statement." Tr. at 612-13. This testimony, however, was elicited by defense counsel. On cross examination, counsel questioned Officer Becerra about whether Hougen's self-defense claim would have prompted a further interview. *Id*. Officer Becerra responded:

>A. An interview would have been conducted regardless. He would have been given an opportunity to have a statement documented so, you know, the statement that he made in that video I think is relevant to the statement he made later when he was being placed in the back of a police car that he was defending himself. So I guess the answer is that he was given an opportunity to make a statement when he was provided his Miranda warning and elected not to provide a statement.

*Id*. Contrary to Hougen's assertion, the Government did not use this testimony to argue that Hougen had an opportunity to exculpate himself and chose not to do so. The Government did not cite to the testimony in its closing argument.

Fourth, Hougen contends that the Government impermissibly relied on the following excerpts of Officer Becerra's testimony:

>Q: And when the officers first arrived on scene and talked to him, did he say he had been attacked and acted in self-defense?
>
>A. No. He just said nothing at all happened.

Tr. at 510. However, Hougen volunteered the response that "nothing happened."

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION

11

Hougen also faults the Government for telling the jury during rebuttal closing to consider all of Hougen's statements admitted into evidence and determine whether any of those statements showed Hougen reasonably believed he was in danger during the altercation with S.B. However, the Government was not commenting on Hougen's silence, but rather on Hougen's voluntary statements and the lack of evidence to support a self-defense theory. This was permissible. *U.S. v. Castillo*, 866 F.2d 1071, 1083 (9th Cir. 1988) ("a prosecutor may properly comment upon a defendant's failure to present witnesses so long as it is not phrased to call attention to defendant's own failure to testify."). "A comment on the failure of the defense as opposed to the defendant to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege." *Id*. (quoting *United States v. Dearden*, 546 F.2d 622, 625 (5th Cir.), cert. denied, 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977)).

The Government did not use Hougen's silence against him or violate his Fifth Amendment rights.

### 4. Exclusion of Evidence of S.B.'s Prior Alleged Attack

Finally, Hougen contends that pursuant to Federal Rule of Evidence 404(b), he should have been allowed to present evidence of the March 23rd incident in which S.B. allegedly beat Barthel. Mot. at 16-19. Hougen argues that this evidence would have corroborated his assertion that he acted in self-defense. *Id*. at 16-17. The evidence was properly excluded.

Rule 404(b)(2) authorizes admission of other acts evidence only when it is used for a permissible purpose, such as proving motive, knowledge, intent, or plan, and where it is offered to prove a material issue before the jury. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002); *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991). The March 23rd incident occurred nine months after the attack at issue, and therefore does not show S.B.'s alleged motive, intent, or plan to attack Hougen months earlier. Nor is the March 23rd incident admissible evidence of "modus operandi" under Rule 404(b). Modus operandi evidence is typically used to explain repeated or complex patterns of criminal activity. *United States v. Gil*, 58 F.3d 1414, 1422

(9th Cir. 1995) (permitting testimony about techniques used by large-scale narcotics traffickers, such as counter-surveillance, using vehicles registered in different names, and communicating via pay phones). Evidence that S.B. was involved in an unrelated assault months after the events at issue is not evidence of a complex or repeated criminal enterprise.

The one case relied upon by Hougen, *Celaya v. Stewart*, 691 F. Supp. 2d 1046, 1058 (D. Az. 2010), is distinguishable. In *Celaya*, the defendant testified she shot the victim in self-defense, after the victim drove her to the desert and tried to rape her. The *Celaya* court found that the trial judge impermissibly excluded witnesses who would have testified that the victim had a pattern of driving prostitutes to the desert and sexually assaulting them. *Id*. at 1057-58. The *Celaya* court reasoned that the government had "opened the door to such evidence" by arguing that the victim was a family man, and further that the evidence was admissible under Rule 404(b) to prove the victim had a design, plan, and intent to sexually assault the defendant. *Id*. at 1081 Unlike in *Celaya*, the Government did not open the door to the March 23rd incident, and as already discussed above, evidence of that incident does not show S.B.'s intent or plan to attack Hougen months earlier.

Additionally, evidence of the March 23rd incident was properly excluded under Federal Rule of Evidence 403. The March 23rd incident had minimal probative value. It occurred well after the attack at issue and involved different parties and different circumstances. Moreover, evidence of the March 23rd incident is character evidence, which pursuant to Federal Rule of Evidence 404(b), cannot be used to show S.B.'s propensity for violence. The minimal probative value of the incident was substantially outweighed by the risk of unfair prejudice and confusion of the issues.

In sum, there was sufficient evidence to support Hougen's conviction and although Hougen argues otherwise, no errors occurred. Hougen's motion for acquittal and a new trial is DENIED.

### B.      Motion to Dismiss Indictment for Lack of Jurisdiction

Hougen alternatively moves to dismiss the indictment for lack of jurisdiction. Mot. at 19-25. Hougen claims Congress exceeded its authority in enacting the Shepard-Byrd Hate Crime Prevention Act ("Shepard-Byrd Act") under which Hougen was convicted. *Id*. He argues that Congress' authority under the Thirteenth Amendment to eliminate badges and incidents of slavery did not include the power to criminalize isolated, local incidents of racially motivated violence. *Id*. Hougen argues there needs to be "carefully tailored legislation" rather than the law as it exists now, which is unconstitutional, makes local private action a "federal assault crime" even though there is no indication that private action will return people to the conditions of slavery, and "effectively displace[s] California's exercise of its police power." *Id*. at 20-21, 23 (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 440 (1968); *City of Boerne v. Flores*, 521 U.S. 507, 529 (1997); and *Shelby County, Ala. v. Holder*, 570 U.S. 528 (2013)); Reply at 12-13.

Hougen's argument is unpersuasive. Congress has the power under the Thirteenth Amendment to pass all laws necessary to abolish the badges and incidents of slavery when it upheld the constitutionality of another federal hate crime statute. *United States v. Allen*, 341 F.3d 870, 884 (9th Cir. 2003). Additionally, as the Government points out, several other courts have rejected the very argument Hougen now raises. Specifically, courts have concluded that the Shepard-Byrd Act is a constitutional exercise of Congress' authority under the Thirteenth Amendment to determined what is a "badge" and "incident" of slavery. *See United States v. Metcalf*, 881 F.3d 641, 645 (8th Cir. 2018); *United States v. Cannon*, 750 F.3d 492, 494-95 (5th Cir. 2014); *United States v. Hatch*, 722 F.3d 1193, 1195 (10th Cir. 2013); *United States v. Henery*, 60 F. Supp. 3d 1126, 1132 (D. Idaho 2014); *United States v. Diggins*, 435 F. Supp. 3d 268, 273 (D. Me. 2019). This Court also rejects Hougen's argument.

//

//

//

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION

**IV.  CONCLUSION**

For the foregoing reasons, the Court **DENIES** Hougen's motion.

**IT IS SO ORDERED.**

Dated: December 1, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 20-cr-00432-EJD-1
ORDER DENYING MOTION FOR A NEW TRIAL OR TO DISMISS FOR LACK OF JURISDICTION
15